IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LINEAGE POWER CORP.<br><br>                Plaintiff,<br><br>      v.<br><br>SYNQOR, INC., and<br>VICTORY SALES, INC.<br><br>                Defendants. | Civil Action<br><br>Case No. 08-C-0397<br><br>**JURY TRIAL DEMANDED** |

## SYNQOR'S FIRST ANSWER TO LINEAGE'S
## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant SynQor, Inc. ("SynQor") respectfully submits this Answer to the claims asserted by Plaintiff Lineage Power Corp. ("Lineage") in its Second Amended Complaint for Patent Infringement ("Complaint"). (*See* Dkt. # 41).

### NATURE OF THE ACTION

1. SynQor admits that in paragraph 1 of the Complaint, Lineage claims that this is a patent infringement action involving power converter technology. SynQor denies the remaining allegations in paragraph 1.

### THE PARTIES

2. Upon information and belief, SynQor admits the allegations of paragraph 2 of the Complaint.

3. SynQor admits the allegations of paragraph 3 of the Complaint.

4. SynQor is without sufficient information to admit or deny the allegations in paragraph 4 of the Complaint and, therefore, denies the allegations in paragraph 4.

5.  SynQor admits that it sells products, including power converters, in the United States, including the state of Wisconsin. SynQor denies that any of its products infringe the asserted patents. SynQor denies the remaining allegations in paragraph 5 of the Answer. SynQor is without sufficient information to admit or deny the allegations in paragraph 5 of the Complaint with regard to the other defendant, and therefore, denies those allegations.

## JURISDICTION AND VENUE

6.  SynQor admits the allegations of paragraph 6 of the Complaint.

7.  SynQor admits that it conducts business in the United States and in the State of Wisconsin. SynQor denies the remaining allegations in paragraph 7 of the Answer. SynQor is without sufficient information to admit or deny the allegations in paragraph 7 of the Complaint with regard to the other defendant, and therefore, denies those allegations.

8.  SynQor admits that it sells products, including power converters, in the United States, including the state of Wisconsin, and that these products are marketed to customers. SynQor denies that any of its products infringe the asserted patents. SynQor denies the remaining allegations in paragraph 8 of the Answer. SynQor is without sufficient information to admit or deny the allegations in paragraph 8 of the Complaint with regard to the other defendant, and therefore, denies those allegations.

9.  SynQor will not contest personal jurisdiction in this case. SynQor is without sufficient information to admit or deny the allegations in paragraph 9 of the Complaint with regard to the other defendant, and therefore, denies those allegations.

10. SynQor admits that Victory Sales is a manufacturing representative for SynQor, and that its territory includes the State of Wisconsin. Upon information and belief, SynQor admits that Victory Sales has an office in Brookfield, Wisconsin. SynQor denies the remaining allegations in paragraph 10 of the Complaint.

11. SynQor will not contest that venue is proper, but contends that venue in this district is inappropriate and that the case should be transferred to a more appropriate forum. SynQor denies that it has committed acts of infringement. SynQor is without sufficient

information to admit or deny the allegations in paragraph 11 of the Complaint with regard to the other defendant, and therefore, denies those allegations.

## COUNT ONE
### Defendants' Infringement of the '344 Patent

12.     SynQor admits that Lineage claims in paragraph 12 of the complaint that it incorporates by reference paragraphs 1-11 of the complaint.  SynQor denies the remaining allegations in paragraph 12 of the Complaint.

13.     SynQor is without sufficient information to admit or deny the allegations of paragraph 13 of the Complaint and, therefore, denies the allegations in paragraph 13.

14.     SynQor denies the allegations of paragraph 14 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

15.     SynQor denies the allegations of paragraph 15 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

16.     SynQor denies the allegations of paragraph 16 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

17.     SynQor denies the allegations of paragraph 17 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

## COUNT TWO
### Defendants' Infringement of the '773 Patent

18.     SynQor admits that Lineage claims in paragraph 18 of the complaint that it incorporates by reference paragraphs 1-11 of the complaint.  SynQor denies the remaining allegations in paragraph 18 of the Complaint.

19.     SynQor is without sufficient information to admit or deny the allegations of paragraph 19 of the Complaint and, therefore, denies the allegations in paragraph 19.  SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

20.     SynQor denies the allegations in paragraph 20 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

21.     SynQor denies the allegations in paragraph 21 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

22.     SynQor denies the allegations in paragraph 22 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

23.     SynQor denies the allegations in paragraph 23 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

## COUNT THREE
### Defendants' Infringement of the '452 Patent

24.     SynQor admits that Lineage claims in paragraph 24 of the complaint that it incorporates by reference paragraphs 1-11 of the complaint.  SynQor denies the remaining allegations in paragraph 24 of the Complaint.

25.     SynQor is without sufficient information to admit or deny the allegations of paragraph 25 of the Complaint and, therefore, denies the allegations in paragraph 25.

26.     SynQor denies the allegations in paragraph 26 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

27. SynQor denies the allegations in paragraph 27 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

28. SynQor denies the allegations in paragraph 28 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

29. SynQor denies the allegations in paragraph 29 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

## COUNT FOUR
### Defendants' Infringement of the '301 Patent

30. SynQor admits that Lineage claims in paragraph 30 of the complaint that it incorporates by reference paragraphs 1-11 of the complaint. SynQor denies the remaining allegations in paragraph 30 of the Complaint.

31. SynQor is without sufficient information to admit or deny the allegations of paragraph 31 of the Complaint and, therefore, denies the allegations in paragraph 31.

32. SynQor denies the allegations in paragraph 32 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

33. SynQor denies the allegations in paragraph 33 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

34. SynQor denies the allegations in paragraph 34 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

35.     SynQor denies the allegation in paragraph 35 with regard to its products. SynQor lacks knowledge or information sufficient to form a belief as to other products, to the extent they are implicated.

## REQUEST FOR RELIEF

SynQor denies that Lineage is entitled to any relief requested in its request for relief or any other relief whatsoever, and SynQor denies all allegations contained in paragraphs A-I of Lineage's request for relief.

## DEMAND FOR JURY TRIAL

SynQor acknowledges and joins Lineage's request for trial by jury on all issues so triable pursuant to Federal Rules of Civil Procedure 38.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

1.      The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

**(Noninfringement of the '344, '773, '452, and '301 Patents)**

2.      SynQor has not directly infringed, has not contributorily infringed, and has not induced infringement of any valid and enforceable claim of the '344, '773, '452 or '301 patents, either literally or under the doctrine of equivalents, and is not liable for any infringement of the '344, '773, '452, or '301 patents.

### THIRD AFFIRMATIVE DEFENSE

**(Prosecution History Estoppel)**

3.      Lineage's claims for relief are barred in whole or in part by the doctrine of prosecution history estoppel.

### FOURTH AFFIRMATIVE DEFENSE

**(Invalidity of the '344, '773, '452, and '301 Patents)**

4. The '344, '773, '452, and '301 patents, and each claim thereof, are invalid and/or unenforceable for failure to meet at least one of the requirements of patentability set forth in 35 U.S.C. § 1 *et seq*., including, without limitation, the requirements of §§ 101, 102, 103, 112 and/or 132, and the rules, regulations and laws pertaining thereto.

## FIFTH AFFIRMATIVE DEFENSE

### (No Willful Infringement of the '344, '773, '452, and '301 Patents)

5. SynQor has not willfully infringed any valid and enforceable claim of the '344, '773, '452, or '301 patent.

## SIXTH AFFIRMATIVE DEFENSE

### (Violation of Fed. R. Civ. Pro. 11)

6. Lineage's claims for relief are barred in whole or in part by Fed. R. Civ. Pro. 11 because the Complaint and Amended Complaint were filed without a good faith basis to allege infringement.

## SEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

7. Lineage's claims for relief are barred in whole or in part by the doctrine of waiver, including without limitation implied waiver.

## EIGHTH AFFIRMATIVE DEFENSE

### (Implied License)

8. Lineage's claims for relief are barred in whole or in part by the doctrine of implied license.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

9. Lineage's claims for relief are barred in whole or in part by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

10. Lineage's claims for relief are barred in whole or in part by the doctrine of estoppel, including but not limited to equitable estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

11. Lineage's claims for relief are barred in whole or in part by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

12. Lineage is barred in whole or in part from relief against SynQor because at least the '344 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the '344 patent before the United States Patent and Trademark Office ("Patent Office"). While the totality of such inequitable conduct is not now known in its entirety and with precision, such conduct includes at least the following grounds.

13. Patent applicants, their attorneys and those substantively involved in prosecuting a patent have a duty of candor to the Patent Office, which includes a duty to disclose to the Patent Office all information material to the examination of their applications, such as prior art that would be material to the examination of the submitted claims. The named inventors Robert J. Roessler and William L. Woods acknowledged this duty to disclose information material to the patentability of '344 patent's application when they signed the Declarations for the application.

14. During the prosecution of the '344 patent, named inventors Roessler and Woods, their attorneys and/or others involved in the prosecution (collectively "Roessler and Woods") violated this duty by deliberately withholding material information from the Patent Office,

misrepresenting and omitting material information, and/or violating the duty of candor to the Patent Office.

15. On or about August 8, 1997, Roessler and Woods filed Application No. 08/908,887 entitled "Methods of Manufacturing A Magnetic Device and Tool for Manufacturing the Same" ("the '887 application"). This application issued as the '344 patent on October 31, 2000.

16. With the '887 application, Roessler and Woods signed sworn declarations acknowledging "the duty to disclose all information which is material to patentability as defined in Title 37, Code of Federal Regulations, 1.56." These declarations also included the assertion that "all statements made herein of my own knowledge are true . . . and further that these statements were made with the knowledge that willful false statements . . . may jeopardize the validity of the application or any patent issued thereon."

17. During the prosecution of the '887 application, Roessler and Woods presented claims that described, *inter alia*, a method of manufacturing a magnetic device employing an automated pick and place tool to assemble the magnetic cores. The examiner repeatedly (at least four times) rejected all these claims over prior art U.S. Patent 5,345,670 to Pitzele et al. ("the Pitzele '670 patent") and its European counterpart, EP 0741395 A1 ("the EP'395 reference"), including in the face of various arguments and amendments to the pending claims. In response to Roessler and Woods' fourth attempt to traverse the Pitzele '670 patent and the EP'395 reference, the examiner indicated that claims 4-6, while objected to as depending from invalid independent claim 1, would be allowable if rewritten in independent form. (Office Action (Dec. 30, 1999), at 3.) These claims included, among other limitations, the limitation "applying an adhesive on a portion of a face of said substrate" or a similar limitation. (Amendment (Sept. 2,

1999), at 2-3.) Without otherwise presenting further arguments attempting to traverse the rejections, Roessler and Woods amended independent claim 1, among other things, to include as a limitation "applying an adhesive on a portion of a face of said substrate" and argued that they had: "amended independent Claims 1 and 15 (and the respective dependent claims) in accordance with the Examiner's suggestion to further the prosecution and to attain allowance of the present Application." (Amendment (Mar. 24, 2000), at 7-8.)

18. At the time that Roessler and Woods were presenting these claims and making these arguments, Roessler and Woods knew of numerous prior art references which disclosed applying an adhesive to a substrate when assembling magnetic cores to that substrate. Roessler and Woods, however, withheld these references from the Patent Office during the prosecution of the '887 application.

19. Examples of such known references are products sold by Lineage's predecessor in interest, Lucent Technologies (collectively, "Lineage") ,before the filing date of the '887 application, including at least the HW converters (part numbers include: HW050A1, HW050F1, HW075A1, HW075F1, HW100A1, HW100F1). SynQor specifically inquired about such products, including the HW converter, in an interrogatory to Lineage asking it to identify, among other things, all its prior art products "– including without limitation the HW family of products (including without limitation part numbers HW050A1, HW050F1, HW075A1, HW075F1, HW100A1, HW100F1) – with magnetic components glued together and/or to the substrate" and "fully describe the manufacturing process" for each such product. Lineage admitted in its response to that interrogatory that "most of Lineage's power converter products in the 1990-1997 timeframe included magnetic components glued together and/or to the substrate," but refused to provide any substantive response on the grounds that the request was "impermissibly broad."

20.     Given Lineage's admission, Lineage sold many converters before the filing date of the '887 application that were manufactured, in part, by applying adhesive to the substrate and gluing one or more magnetic cores to the substrate.  On information and belief, Lineage's HW converters are one such set of products.  Furthermore, with respect to at least Lineage's HW converters, on information and belief, the characteristics of those converters are such that, if manufactured pursuant to the automated method of claim 1, such manufacture would be within the scope of at least claim 1.  While Lineage has so far refused to identify which of those products were manufactured using an automated pick and place tool to assist in the assembly of the magnetic cores, regardless, such products were material to the examination of the '887 application.  The examiner made clear throughout the prosecution that the limitations regarding automating the assembly did not impart patentability: "It would have been obvious to one having ordinary skill in the art at the time the invention was made to employ an automated pick and placement tool, since it has been held that broadly providing a mechanical or automatic means to replace manual activity which has accomplished the same result involves only routine skill in the art."  (Office Action (Dec. 30, 1999), at 2.)  Thus, Lineage's prior art products, the manufacture of which meets, for instance, the "applying an adhesive on a portion of a face of said substrate" limitation, were material prior art and those products and their method of manufacture should have been disclosed.

21.     On information and belief, Roessler and Woods knew of these products, including the HW converters, during and/or before the pendency of the '887 application.  After all, these products were designed and/or sold while Roessler and Woods were employed as engineers at Lineage.  Moreover, an Advanced Datasheet for the HW converters was disclosed to the Patent Office during prosecution of the co-pending application for the '773 patent.

11

22. And, Lineage's prior art products, including the HW converters, were highly material to the examination of the '887 application. They would have been important to a reasonable examiner considering the patentability of the '887 application. Either alone, or in combination with other prior art, Lineage's prior art products present a prima facie case of unpatentability of claims presented in the '887 application. They are also inconsistent with the arguments made by Roessler and Woods to the Patent Office.

23. Another example of such known references is U.S. Patent 5,750,935 to Stevens ("the Stevens '935 patent"). The Stevens '935 patent is another Lineage-owned patent, the application for which was filed 15 months before the '887 application. The Stevens '935 patent issued May 12, 1998. The Stevens '935 patent deals with the manufacture of converters with magnetic components and discloses, among other things:

> "In other assembly processes different types of glues are used to hold the magnetic core halves together. In these processes, a separate assembly process is used to carefully apply the glue and assemble the magnetic core………For the integrated planar structure the core halves are glued directly to the main board. While the gluing process can be used with planar magnetic applications, it involves a costly separate assembling process to assemble the magnetic core components." (Col. 1, Lines 43-54.)

24. The disclosure of the Stevens '935 patent would have been material to the examiner of the '887 application, especially in light of the amendment adding the limitation "applying an adhesive on a portion of a face of said substrate" to distinguish the cited prior art. Roessler and Woods knew of the Stevens '935 patent during the pendency of the '887 application. Specifically, the Stevens '935 patent is cited in the original application, filed during pendency of the '887 application, for the '301 patent, and both Roessler and Woods are named inventor on the '301 patent.

25. The Stevens '935 patent was highly material to the examination of the '887 application. It would have been important to a reasonable examiner considering the patentability of the '887 application. The Stevens '935 patent, either alone or in combination with other prior art, presents a prima facie case of unpatentability of claims presented in the '887 application. It is also inconsistent with the arguments made by Roessler and Woods to the Patent Office.

26. Roessler and Woods had a duty to disclose at least the prior art identified above. Roessler and Woods were aware of the prior art and its materiality at least because it was specifically cited in Roessler and Woods' other applications and/or because, as Lineage has admitted, many of their products meet the identified limitation and these products were designed and/or sold while Roessler and Woods were employed as Lineage engineers . The undisclosed prior art was highly relevant and refuted several statements made by Roessler and Woods during the prosecution of the '344 patent. To make these statements and withhold this information was a material breach of the duty of candor owed to the Patent Office.

27. Upon information and belief, Roessler and Woods' failure to disclose the Lineage products, including the HW converter, and the Stevens '935 patent was done knowingly and with an intent to deceive the Patent Office. Evidence of Roessler and Woods' bad faith is found in the fact that they made arguments to the Patent Office in support of the patentability of their claims which were refuted by prior art that they were aware of, but withheld from the Patent Office. Further evidence of Roessler and Woods' bad faith is found in the fact that they disclosed the Stevens '935 patent in other pending applications before the Patent Office, but withheld it from the examiner of the '887 application, despite its high materiality to the specific limitation the examiner appears to have believed was lacking in the cited prior art. Yet further evidence of Roessler and Woods' bad faith is found in the fact that Lineage disclosed an Advanced Datasheet

for the HW converters in other pending applications before the Patent Office, but Roessler and Woods withheld it from the examiner of the '887 application, despite its high materiality to the specific limitation the examiner appears to have believed was lacking in the cited prior art. In addition to individually suggesting deceptive intent, the above-identified conduct indicates a pattern of misconduct intended to deceive the Patent Office into erroneously issuing the '344 patent. Roessler and Woods' actions constitute inequitable conduct which renders the '344 patent unenforceable in its entirety.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Patent Misuse)

28. Lineage's claims for relief are barred in whole or in part by the doctrine of patent misuse.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Prosecution Laches)

29. Lineage's claims for relief are barred in whole or in part by the doctrine of prosecution laches.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Section 288)

30. Lineage's claims for relief are barred in whole or in part under 35 U.S.C. § 288, and any costs sought by Lineage are limited by 35 U.S.C. § 288.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Sections 286 and/or 287)

31. Any damages sought by Lineage are limited by 35 U.S.C. §§ 286 and/or 287.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Other Affirmative Defenses)

32.     SynQor reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

Dated:    January 6, 2008

*/s/ Michael J. Modl*

**Michael J. Modl**
mmodl@axley.com
**AXLEY BRYNELSON, LLP**
**2 East Mifflin St., Ste. 200 (53703)**
P.O. Box 1767
Madison, WI
608-257-5661
mmodl@axley.com


**Thomas D. Rein** (*pro hac vice*)
trein@sidley.com
**Russell E. Cass** (*pro hac vice*)
rcass@sidley.com
**April D. Lambert** (*pro hac vice*)
alambert@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL   60603
Telephone:    312.853.7000
Facsimile:    312.853.7036


**Michael D. Hatcher** (*pro hac vice*)
mhatcher@sidley.com
**SIDLEY AUSTIN LLP**
717 North Harwood, Suite 3400
Dallas, TX   75201
Telephone:    214.981.3300
Facsimile:    214.981.3400


*ATTORNEYS FOR DEFENDANTS.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2008, I electronically filed the foregoing through the Court's ECF system, which will send a notice via electronic filing to all counsel of record.

/s/ Karen M. Iordachescu

CH1 4529936v.1